The next matter, number 25-1407, Alan Dworman v. PHH Mortgage Services et al. At this time, would counsel for the appellant please introduce himself on the record to begin. Good morning, your honors. Mark Dickinson for the appellant, Alan Dworman. I may reserve one minute for rebuttal, please. You may. Thank you. Your honors, this case should be reversed for the straightforward reason that the district court granted summary judgment without allowing Mr. Dworman to obtain the the critical evidence that he needed to go to the matter as to whether this loan had been discharged, and that was the tax returns of Ocwin and the ultimate holder of the note. Did you ask for the second thing you just said? Because I don't understand why Ocwin's tax returns would show anything. Did you ask for the tax returns of the ultimate holder of the note? We did in a general way, your honor. What does that mean? Well, first of all, we did a document request that generally asks... In your Rule 56 request to Judge Guzman, did you ask for the tax returns of the holder of the note? Your honor, we asked... I can't say we definitively asked for the holder of the note. We definitely asked... Can you tell me what Ocwin's tax returns would have shown about whether this note had been written off? Well, Ocwin was the entity that issued the 1099, so... But their job is to service the loan.  The money is owed to, I think it's Deutsche Bank, right? It's Deutsche Bank, correct. If the loan were forgiven, wouldn't that occur to the benefit or the tax write-off of Deutsche Bank? It likely would have. And, you know, so obviously our request could have been more targeted. But honestly, your honor, we asked for, during the 36th deposition... Significance to Ocwin's tax returns? They're possibly... Again, it's the issue... Just stick with... I'll go question by question. What is the relevance of Ocwin's tax returns? What could it show? It could show... Ultimately, the issue is whether this debt was written off. How would Ocwin's tax returns show that? It likely would not. So the whole thing then depends on whether, in requesting Ocwin's tax returns, we should understand you to have requested Deutsche Bank's. Correct. Okay. If we don't agree that you did request Deutsche Bank's, how can you win? Well, we can win because there's other issues at play. Okay, so why don't we move on to those? You know, obviously there's the 10... The case was motivated because the 1099 was issued saying that Mr. Dorman's debt was canceled. We believe... And I know that precedent... And who's your contract with? Who's our... Our contract is with... The HAMP agreement is with Ocwin. Ocwin. Okay. And Ocwin promised you about reducing an amount. Correct. Right? That's how I read the contract. It never refers to the debt being forgiven. Well, it's... The amount. The amount of the debt. And that's the amount you owe... That you owe to Ocwin. Correct. That's separate and apart from whatever the note was and whatever the obligation to Deutsche Bank is. Now, it may be that that's... Based on your agreement with Ocwin, when Ocwin forgives, that's going to make it impossible for Deutsche Bank to come after you. But you have no contractual agreement that you're disputing that relates to Deutsche Bank itself, correct? We're... Correct? That's correct. I mean, we're trying to... And Ocwin can't on its own forgive a debt that Deutsche Bank owes, can it? Well, by virtue of its conduct, it can certainly... It's the agent and servicer of this loan. Does that mean it has the power to actually forgive the loan? It may not, but it... Okay. So then what I understood the loan... The agreement was, was just always talking about a balance and an amount, which is a perfectly fine thing to agree. You agree that you're going to pay this amount or not that amount if you do certain things.  One of which was not being in arrears. Right. Not being in arrears. And if you are in arrears, then they're not going to reduce the amount. That's what the contract says, right? Right. But that condition could be waived. And that's basically what our... So then with respect to the claim that they waived it, the evidence that they waived you being in arrears was the 1099? No, we had three things. First of all, the 1099. Secondly, there's this June 2019 transfer notice when Ocwin takes over the servicing of the loan. The document there does not... It was sent to Mr. Ocwin. It basically indicates that the balance is still in effect. And you agree there were documents both before that letter and after that letter that show the correct amount? Yes, we have to concede that. Mr. Dwarman disputes that he actually received the correction, but there's no doubt that it was sent in due course. But the bottom line is the third aspect is that the 1099 sent by Ocwin was never corrected. So we have kind of three elements here that raise a genuine dispute of fact that precluded the entry of summary judgment. And had we received... But if we follow... Just on that, let's focus on the 1099. I mean, that seems... If we followed the Fourth Circuit's... I think it was the Fourth Circuit's idea. Fourth Circuit, yes. Then there's nothing to correct because it doesn't itself say that the amount of money has been forgiven, right? I mean, that's not the meaning of a 1099-C. Well, that's where we dispute... I mean, the 1099, as the courts have all... that have ruled on these issues determined, they're extraordinarily confusing consumers. They're a notice that say in large, bold letters that the debt was canceled. And again, that's the triggering. It was the underlying premise of why Mr. Dwarman brought this lawsuit. He thought his debt had been canceled. And so now the question is, you know, effectively, Ocwen and it's the holder of the note are going to be able to collect all the money that was supposed to be forgiven. But if we follow... The Fourth Circuit's reasoning, at least, would be that the 1099-C is issued if any of these conditions exist. And one of them is an agreement to... I think something like an agreement to forgive is a condition. And so they did that. And then the condition, the agreement is not satisfied. And so your position is that in that circumstance, they have to issue a correction because the 1099-C otherwise means the debt was forgiven? Well, not necessarily. What happens is just as a practical matter, the 1099 is issued to Mr. Dwarman saying his debt is canceled. He submits that to his accountant. Well, the first thing you just kind of added, I mean, at least according to the Fourth Circuit, that just means one of these conditions, one of which being there's an agreement to forgive exists. I understand what you're saying. He received a notice that it was to be forgiven. And obviously, Ocwen's saying it's just a notice due to tax obligations to give you that notice. But Mr. Dwarman, relying on that notice, files his taxes accordingly, acts accordingly. He's making payments where he can. He's making payments to this day. And at some point, there's an additional 2019 transfer document that seems to indicate that the debt had been, maybe not forgiven, but the agreement was still in place. And then on top of that, there's no notice of cancellation. Those are the three things, the 1099-C, the existence of it, the erroneous letter from, I forget the new company, but when they take over. It was Ocwen, yeah. And then the third thing is that they did not subsequently issue something to correct the 1099-C once they made the finding that he didn't meet the agreement's terms. Correct. Correct. I mean, again, what happened here is we believe the combination of factors of three things were enough for the judge to require the judge to say there's a material issue and a fact here. At the end of the day... And the material issue and fact goes to whether they waive the condition precedent? Yes. Yeah. And just so I understand, the condition precedent is I'm not in default on my new such that the equivalent of three full monthly payments are due and unpaid. You agree that no matter what happened with the 1099, that's just true. He had not satisfied the condition precedent. That's right. We have to concede that. He didn't satisfy that. Okay. So I'm just not following how does the... Just reading the text of the relevant contract provision, what's your theory whereby the things you referred to constitute a waiver of that condition for what balance has to be paid? Because essentially, Mr. Dwarman then relies upon having received the notice, he continues to make best efforts to pay and to achieve... The whole goal of this agreement, the HAMP agreement, is to give borrowers like Mr. Dwarman the opportunity to keep their homes. I'm just going to stick in with the contract. The contract provision says 465,000 of the new principal balance shall be deferred, and then I will not pay interest to make monthly payments on the deferred principal balance. In addition, 460,000 of that balance is eligible for forgiveness. Not the loan. The balance is eligible for forgiveness as long as I meet this condition. The condition is I won't be in arrears. You concede he did not meet that condition. Correct. So he's just agreed 406,000 of the balance can be forgiven. What suggests they waived their right to say we're not going to forgive that part of the balance just under this contract? Well, under the contract, I don't think we have anything under the contract. It's just the... That's what you're claiming. Your claim is for them breaching this contract, they say, no, you didn't meet your condition precedent. You say, no, you waived that condition precedent. That's why there was a breach. That's your argument, right? Yeah, it is our argument. So you have to show that they waived the condition precedent under this contract. And I'm just not understanding why the documents you're referring to suggest they waived the condition precedent for the forgiveness of the deferred principal balance. I just don't see that. Well, Your Honor, it's a tough case. I admit that. But the waiver essentially goes to the heart of the 1099 being an indication that the holder of the note and its agent, Ocwen, believed that at the outset of the case, that the debt was forgiven. And there's the condition precedent. We're just forgiving it. Forget it. We don't care if you ever pay again. But they got some consideration from the government for being a participant in the HAMP program. And if they'd written off the tax liability of this note already to be double dipping to continue to receive these payments. And we just don't know that. That's why we're asking for the further discovery. It just seems like another way this could have happened. If they'd come after you, you would have had a good defense if, in fact, it had been paid off. You'd have a lousy defense if it hadn't been paid off. But I'm having trouble seeing how you can convert that situation into one in which you can show that they somehow waived a condition precedent on the contract, which is only talking about a balance that has to be paid, doesn't refer to the loan at all. Right. Well, again, we believe that there was enough here to give us a genuine issue of that. I was going to ask you, give me one or two examples where you have genuine issues of material facts. And this is a summary judgment. The genuine issue is whether or not, you know, whether or not this loan was forgiven by Deutsche or its agent when they issued this 1099. And then they have a June 2019 transfer statement that indicates that even though Mr. Dormant hadn't paid regularly and hadn't met the requirements of the HAMP agreement, they still show that he's in compliance. Those are indications that perhaps further discovery, if we'd been attentive, would maybe there's some underlying document that these folks actually waived the condition. Thank you. Thank you. Thank you, counsel. At this time, would counsel for Applese please introduce themselves on the record to begin? Good morning. May it please the court. Marissa DeLinks from Hinshaw and Culbertson on behalf of the defendant Applese, Aukwin Loan Servicing and PHH Mortgage Corporation. I want to make one point that Deutsche Bank is not a party to this action. They're not a defendant in this case. The second point I would like to make is that the briefing that is before the court by Mr. Dormant as well as the record below shows that Mr. Dormant did not ask for Deutsche Bank's tax returns. He asked for Aukwin Loan Servicing's tax returns and Aukwin actually produced an affidavit in response to that request, which was agreed to by counsel. I understand that's disputed issue, but and the affidavit from Aukwin indicates that it did not write off the debt. It did not receive a tax write-off as a result of the 1099 being issued. There was no disputed issue effect here. Counsel, let me ask you before going to summary judgment. I'm looking at the appellant's statement of issues and one of the issues counsel was arguing was that there should have been additional discovery, but there's no appellate issue about there was an error in discovery, correct? I'm sorry, there's no appellate issue that there was an error in discovery? His client, Dormant, has not raised an issue. There's five appellate issues. There's no discovery issue on appeal. That's right. So we're just bound by the summary judgment record, the issues. Those are the issues on appeal. Right. Whether on that record. That's right. The record before the court was complete, before summary judgment was entered, it was in opposition to summary judgment that Mr. Dormant first asked for the additional discovery. Not in a motion to compel. That was, you know, he's still raising the little 56D issue on appeal. He is raising that on appeal. Yes, I'm sorry if I misunderstood the question. He's raising that issue on appeal and he did. But you're just saying you win on it because the district court was right to say that what he wanted for the additional discovery was not material. That's right. That's the argument. And then with regard to summary judgment, I, of course, disagree that there was any kind of genuine issue of disputed fact with regard to whether the... Could you clear something up for me? Because your briefing and your opponent's briefing don't sync up in the way that oftentimes we hope that they would. So, you seem to be saying he's now making a bunch of arguments that he is unable to make and they don't relate to his claims, etc. But suppose I read his brief to be saying there was a breach of contract because I didn't get my payoff letter. I'm not entitled to the payoff letter unless I satisfy the condition precedent of not being in breach. I take him to be making that argument on appeal. Do you? Well, he is making that argument on appeal. Okay. And then your contention is... He didn't waive it below. I'm sorry. He didn't make the argument below. I'm sorry. The judge did not decide that issue. Correct. But was it raised to the judge? Some of it was raised to the judge. So, that helps me understand. But that's consistent with his claim of breach. Not as it was pled. Why not? Because his claim of breach as it was pled was that the 1099C discharged the debt, period. We breached the contract because the 1099C was issued and that discharged the $406,714.94. That is the claim that was pled. What's the difference between that and what he's now saying is the waiver of the condition precedent? In other words, the breach would always be the refusal to give the payoff letter. The refusal to discharge the debt is the breach. Not the payoff letter, but the debt itself. The $406,714.94. So, you're suggesting that his complaint claimed a contractual right to have the debt paid off? Yes. And then he's just suing the wrong party? Because obviously, Ockwin can't relinquish the debt. So, why wouldn't we read the complaint to have been since he sued Ockwin and Ockwin had agreed to reduce the principal amount, the balance, whatever that phrase is in the contract, by a significant amount unless he was in arrears? Why wouldn't he read it just as he's now saying it, which is the 1099 simply shows that the debt was in fact paid off, which we should understand as evidence of a waiver of the condition precedent? If you recall, he actually pled in the complaint that he complied with all the conditions of the... So, he wasn't in arrears. No, he couldn't have been saying waiver because he said he complied. Exactly. So, he didn't say he was in arrears and that they waived the condition precedent. Okay. But the district court then did decide... Waiver. Waiver. Well, the district court did treat him as saying that the conditions precedent, though not met, that he was still claiming breach though, right? Correct. Judge Guzman did not address the waiver of the condition precedent in her decision. Right. But did Judge Guzman treat his claim of breach as being dependent on him being in compliance with the condition precedent? Yes. I mean, yes. What she found was that Aukwin and PHH Mortgage, that he didn't meet the condition precedent. Therefore, they were not in breach of contract because they applied the terms as they were written. I see. So, she treated... And you say the right way to read his complaint is he was just contending, I was in compliance. I was in compliance and you issued a 1099-C. By the way, recall please that the 1099-C, the date of it was December 5th of 2016. The agreement was just papered on December 1st. So, we didn't even have a chance for him to comply with anything before that 1099-C was issued. He hadn't had a chance to even perform. So, how do you understand the significance of 1099-C to his claim? How I understand it is the way he pled it was that document discharged the $406,000. Meaning it's evidence that the company had given up whatever right it had preserved to enforce that right that it had preserved. It had made a decision evidenced by this document. You know what? Forget it. We're just going to let him have the $406,000. Just sounds like the waiver claim he's making on appeal. Right. It was not pleaded and I guess my concern was the fact that Judge... What do we do with the fact that Judge Guzman... If we think it was pleaded and we think it matches up with the argument he's now making on appeal, yet Judge Guzman has not decided the waiver claim, what should we do? Well, you can decide it. It's in the record. And so, it's up to you. And so, I did address it. On the waiver claim, what's your reason for saying there was no waiver based on the evidence that he's pointing to as the evidence of the waiver? Well, to begin with, the 1099-C itself is not sufficient evidence that any debt was discharged. Secondly... But even just help me just looking at the contract's terms. Mm-hmm. If it was evidence that the debt had been discharged, I'm just not quite understanding how that shows a waiver of the agreement with AQUIN because it doesn't speak about a debt. It talks about an amount and a balance that had to be paid. I agree. I agree, Your Honor. It's a very inefficient claim, I guess I could say. It doesn't make much sense when putting all the facts together right, just even logically saying that somebody completes an agreement and agrees that as of January 1st of 2017, this agreement is going to come into play. And then before we even get to the agreement, AQUIN throws up their hands and issues a 1099-C and discharges the debt that it doesn't owe. So it doesn't make sense, Your Honor, that it doesn't. That is not evidence that shows that AQUIN could have discharged the debt. Because it would seem like a pretty good defense if you would come after him for payment of this balance amount when the debt had been discharged, he would be in good position. And then he would have a good argument to say, I should be able to prove and get discovery to show that it in fact was discharged. And maybe the 1099 would even be evidence to support that as a defense. Right. It could not. I mean, I think the foreign 1099-C, the way the majority is ruling or considers it is it may be evidence in conjunction with other evidence that the debt might have been discharged, that a debt may have been discharged. But standing alone on itself, by itself, it is not evidence that the debt was discharged. It is evidence that a party is required to comply or is requiring with the IRS regulations based on an identifiable event in the particular statute. And so I think with regard to the rest of his evidence that he laid out for you, the three things that he thinks showed a waiver of this condition precedent, the 1099-C didn't do it. There was no need to correct the 1099-C because it wasn't wrong. And then finally, the June 4th letter that was corrected in August, it's not competent evidence that shows that AQUIN, if it could have, did discharge that $406,000 debt. Thank you. That's where we are. And I guess if the panel doesn't have any further questions for me, I'll rest of my papers. Thank you. Thank you, counsel. At this time, would counsel for the appellant please reintroduce himself on the record? He has a one-minute rebuttal. Good morning again, Your Honors. Mark Dickinson We did plead, as is common generally at the complaint stage, that the debt was discharged based solely on the 1099. But as we got discovery, got into the case, we clearly did argue before Judge Guzman. But the point of pleading that the debt was discharged was to show what? Because given that your claim was for breach of contract by AQUIN, what was the significance of pleading that the debt had been discharged? Well, because if the underlying debt was discharged, then AQUIN would ordinarily, under the HAMP agreement, our client would be relieved from having to make the payments that had been forgiven. I think it's the... Were they coming after you for those payments? No, they weren't. They weren't. So that's what I don't understand. What was your claim? The claim was we wanted the benefit of the HAMP agreement that... Which was what, in the form of a payoff letter or what? Well, in the form that that $406,000 was forgiven. We wanted a declaration that that was forgiven so the client could refinance his house and get the equity that he believes he's entitled to. Thank you. Thank you. Thank you, counsel. That concludes argument in this case.